# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAMMIE FROST *et al.*, *Plaintiffs*, v. ISLAMIC REPUBLIC OF IRAN, *Defendant*. | Civil Action No. 17-603 (TJK) |

## MEMORANDUM OPINION

In January 2016, Waiel El-Maadawy, Amr Mohamed, and Russell Frost—U.S. citizens serving as private defense contractors in Baghdad, Iraq—were kidnapped and tortured for a month by the militant group Saraya al-Salaam, which was supported by Iran. Less than two years later, Frost died, in part from injuries suffered during his captivity. El-Maadawy, Mohamed, Frost's estate and their affected family members sued Iran for its material support for the kidnapping under the terrorism exception to the Foreign Sovereign Immunities Act. After a three-day evidentiary hearing, the Court entered default judgment against Iran, *see Frost v. Islamic Republic of Iran*, 383 F. Supp. 3d 33 (D.D.C. 2019), appointed Deborah Greenspan as a Special Master, and requested that she prepare a report "regarding each Plaintiff's compensatory damages claims" to include "findings of fact and conclusions of law regarding each item of compensatory damages," ECF No. 53.

Relying on depositions, affidavits, medical records, and other evidence, the Special Master produced a detailed report containing the facts relevant to the compensatory damages claims and analyzing those facts under the law. *See* Special Master's Report and Recommendation Regarding Compensatory Damages ("R&R"), ECF No. 56. Plaintiffs then

moved for the Court to adopt the report, enter judgment in the same amounts recommended by the Special Master, and award punitive damages of $150,000,000 to each of the three affected families, for a total of $450,000,000. *See* ECF No. 58.

After reviewing the Special Master's thorough and well-written report, for which the Court thanks her, the Court adopts its factual findings and recommendations—except insofar as the report recommends an award of economic damages—and will award Plaintiffs a total judgment of $80,180,000 for compensatory damages. In addition, for the reasons explained below, the Court will award punitive damages in the amount of $160,360,000 to be apportioned to each Plaintiff relative to their individual compensatory awards. Accordingly, Plaintiffs' motion will be granted in part and denied in part.[1]

## I. Damages

The damages requested by Plaintiffs here are authorized by 28 U.S.C. § 1605A(c), which specifically references "economic damages, solatium, pain and suffering, and punitive damages." Plaintiffs "must prove the amount of the damages by a reasonable estimate consistent with this Circuit's application of the American rule on damages." *Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 37 (D.D.C. 2012) (internal quotation marks and citation omitted). In determining the "reasonable estimate," courts may look to expert testimony and prior awards for comparable injury. *See Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 214 (D.D.C. 2012); *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 29 (D.D.C. 2008). As for non-economic damages—*i.e.*, solatium and pain and suffering—the Court adopts the Special Master's

---

[1] The Court assumes familiarity with the facts of this case, set forth in its opinion awarding Plaintiffs a default judgment against Iran, *see Frost*, 383 F. Supp. 3d at 38–43 (D.D.C. 2019) and incorporated here by reference.

recommendations and for the reasons described in the report will award the recommended damages to each Plaintiff. *See* R&R at 55–75. These amounts, totaling $80,180,000, are reflected in the following chart:

| Plaintiff | Confinement | Post-captivity Pain and Suffering or Solatium Award | Total Award |
|---|---|---|---|
| RUSSELL FROST ESTATE | $310,000 | $5,000,000 | $5,310,000 |
| WAIEL EL-MAADAWY | $310,000 | $9,250,000 | $9,310,000 |
| AMR MOHAMED | $310,000 | $9,500,000 | $9,810,000 |
| | | | |
| TAMMIE FROST | | $10,000,000 | $10,000,000 |
| AMANDA FROST | | $5,000,000 | $5,000,000 |
| CRYSTAL FROST | | $5,250,000 | $5,250,000 |
| M.F. (minor) | | $5,000,000 | $5,000,000 |
| | | | |
| BILQIS AIDARA ADJEI | | $4,000,000 | $4,000,000 |
| A.G. | | $2,500,000 | $2,500,000 |
| M.E. | | $2,500,000 | $2,500,000 |
| G.E. | | $2,500,000 | $2,500,000 |
| ZEINAB EL-MAADAWY | | $2,500,000 | $2,500,000 |
| IHAB EL-MAADAWY | | $1,250,000 | $1,250,000 |
| TAMER EL-MAADAWY | | $1,250,000 | $1,250,000 |
| MOHAMMED EL-MAADAWY | | $1,250,000 | $1,250,000 |
| MUSTAFA EL-MAADAWY | | $1,250,000 | $1,250,000 |
| | | | |
| BRENDA MOHAMED | | $4,000,000 | $4,000,000 |
| LORI WENDEL | | $2,500,000 | $2,500,000 |
| MEGAN MARTIN | | $2,500,000 | $2,500,000 |
| DREW ROWE | | $2,500,000 | $2,500,000 |

3

*Id.* at 76.  The Court addresses the additional topics of economic damages and punitive damages below.

### A.     **Economic Damages**

In their motion for default judgment, El-Maadawy, Mohamed, and Frost's estate requested economic damages; El-Maadawy and Mohamed have shown that their ability to work was greatly compromised as a result of their ordeal.  *See* ECF No. 28 at 24–29.  But the Special Master identified a threshold question concerning whether the award of economic damages is appropriate, given that they were not requested in the operative complaint's prayer for relief.  For the reasons explained below, the Court regrettably holds that it may not award economic damages in this case.

Federal Rule of Civil Procedure 54(c) provides: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Here, in their operative complaint, Plaintiffs included a detailed prayer for relief that requested damages against Iran for (1) the "confinement and attendant loss of liberty" for El-Maadawy, Mohamed, and Frost; (2) pain and suffering for each of them; (3) solatium damages for their affected family members; (4) punitive damages; and (5) "[s]uch other and further relief as the Court may determine to be just and equitable under the circumstances."  *See* ECF No. 17 at 30–32.  Nowhere does the prayer for relief mention economic damages.

Courts have invoked Rule 54(c) to deny, for example, prejudgment interest on compensatory damage awards when that specific form of relief was not demanded in the complaint.  *See, e.g., Cohen v. Islamic Republic of Iran*, 268 F. Supp. 3d 19, 27 n.2 (D.D.C. 2017), *abrogated in part on other grounds by Owens v. Republic of Sudan*, 864 F.3d 751, 812

4

(D.C. Cir. 2017). And courts have also held that general language seeking "other" relief does not suffice to permit the award of types of damages not otherwise requested in the complaint in the context of a default judgment. *See Salmeron v. D.C.*, 77 F. Supp. 3d 201, 211–12 (D.D.C. 2015), *vacated on other grounds*, 113 F. Supp. 3d 263. Indeed, the Court has located no authority to the contrary on that point.

The operative complaint does plead, as part of several counts, that a "private right of action is established under 28 U.S.C. § 1605A(c) for violations of that section leading to injuries that 'may include economic damages, solatium, pain and suffering, and punitive damages.'" ECF No. 17 ¶¶ 154, 163, 172. But an allegation in a complaint that the relevant statute *authorizes* certain types of damages is different than actually *demanding* them, as required by the text of Rule 54(c). The Special Master notes that least one court outside this District has held that, for purposes of Rule 54(c), a demand for "statutory" damages in the prayer for relief encompassed all the forms of relief authorized under the statute. S*ee* R&R at 49. But that is still a far cry from merely alleging, in the body of the complaint, that the statute authorizes a particular type of damages and then excluding those damages from the prayer for relief. For all these reasons, the Court must reluctantly conclude that under Rule 54(c) it may not award economic damages here.

### B. Punitive Damages

The Special Master was not tasked by the Court with recommending whether, and if so in what amount, punitive damages are appropriate in this case. The Court thus turns to that task.

"Punitive damages are not meant to compensate the victim, but [are] instead meant to award the victim an amount of money that will punish outrageous behavior and deter such

outrageous conduct in the future." *Bodoff v. Islamic Republic of Iran*, 907 F. Supp. 2d 93, 105 (D.D.C. 2012) (quoting *Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44, 56 (D.D.C. 2012)). Courts routinely award punitive damages in cases brought under the terrorism exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*, and Iran's conduct relative to this case obviously warrants them.

Courts use four factors to determine to the proper amount of punitive damages to award to a plaintiff: "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Bodoff*, 907 F. Supp. 2d at 105 (quoting *Acosta v. The Islamic Republic of Iran*, 574 F. Supp. 2d 15, 30 (D.D.C. 2008)). Here, these factors weigh in favor of a substantial punitive damages award. The kidnapping and torture of El-Maadawy, Mohamed, and Frost was a heinous act that led to Frost's death and caused tremendous suffering for the survivors and affected family members. Iran's provision of material support to militant groups for the purpose of harming U.S. citizens is "part of a longstanding pattern and policy, making the need for deterrence clear." *Hekmati v. Islamic Republic of Iran*, 278 F. Supp. 3d 145, 166 (D.D.C. 2017). And "Iran is a sovereign and has substantial wealth." *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 25 (D.D.C. 2016).

Courts have used several methods to determine the exact amount of punitive damages, while considering these factors. *See Warmbier v. Democratic People's Republic of Korea*, 356 F. Supp. 3d 30, 59–60 (D.D.C. 2018) (discussing each approach). One approach often used in cases of exceptionally deadly attacks is to multiply the foreign state's annual expenditures on terrorism by a factor between three and five. *Id*. A second approach pegs punitive damages to

the ratio of punitive to compensatory damages set forth in earlier cases, if similar conduct has already been litigated. *Id.* at 60. And a third approach simply awards $150,000,000 per affected family. *Id.* Plaintiffs here urge the Court to use the last method, requesting an award of punitive damages of $150,000,000 for each of the three families, to be apportioned proportionately for each family member. *See* ECF No. 58.

After reviewing the evidence and the case law applying the three approaches above, the Court holds that the second approach is appropriate here, and it will award punitive damages double the amount of compensatory damages.

As for the first approach, the result of the kidnapping and torture of El-Maadawy, Mohamed, and Frost—while outrageous—was not "exceptionally deadly" when compared to other cases brought under the terrorism exception to the Foreign Sovereign Immunities Act, such as the Beirut bombing which killed 241 Americans. *See Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d. 51, 55 (D.D.C. 2010). Perhaps recognizing that under that approach punitive damages could run into the billions of dollars, Plaintiffs have not argued for it, or sought to create an evidentiary record to support it. And the third approach advocated by Plaintiffs is more typically employed when similar conduct has never been litigated or in cases of terrorist attacks more deadly than what happened here. *See, e.g., Warmbier*, 356 F. Supp. 3d at 60 (noting that the case was "unique"); *Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 83 (D.D.C. 2011); *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 75 (D.D.C. 2008).

In contrast, and tragically, cases somewhat like this one involving U.S. citizens kidnapped, tortured and killed in Iraq by Iranian-backed militias have been litigated. *See, e.g., Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54 (2018). And in *Fritz*, the court used the

second approach to calculate punitive damages by using a multiplier of two. *Id.* at 65. Courts have considered multipliers "between one and five depending on various factors, including, among other things, whether the case involved exceptional circumstances, the perceived deterrence effect, the nexus between the defendant and the injurious acts, and the evidence plaintiffs presented regarding the defendant's funding for terrorist activities." *Hamen v. Islamic Republic of Iran*, 407 F. Supp. 3d 1, 10 (D.D.C. 2019). Guided by those cases, and especially by the relative similarity between Plaintiffs in this case and those in *Fritz*, the Court will also use a multiplier of two and award punitive damages double the amount of compensatory damages. *See Hamen*, 407 F. Supp. 3d at 10–11 (discussing cases using various multipliers). The Court will therefore award punitive damages in the amount of $160,360,000 to be apportioned to each Plaintiff relative to their individual compensatory awards.

## II. Conclusion

For the reasons explained above, Plaintiffs' motion will be granted in part and denied in part. The Court adopts the Special Master's factual findings and recommendations—except insofar as the report recommends an award of economic damages—and will award Plaintiffs a total judgment of $80,180,000 for compensatory damages. In addition, the Court will award punitive damages in the amount of $160,360,000 to be apportioned to each Plaintiff relative to their individual compensatory awards. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: January 17, 2020